UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) NO. 5:10-CR-00099-KKC-MAS |
| ROBERT ALLAN WALKER, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

The Court, on referral from the District Court, reviews reported violations of supervised release conditions by Defendant Robert Allan Walker ("Walker"). Considering the record, proffer, and Walker's allocution at the revocation hearing, the Court recommends that the District Court not revoke Walker's term of supervision at this time and that Walker continue to serve his current lifetime term of supervised release without modification.

**I.  CASE BACKGROUND**

On October 8, 2010, Walker pleaded guilty to two counts of receiving child pornography, a violation of 18 U.S.C. § 2252(a)(2). [DE 13]. On January 19, 2011, District Judge Caldwell sentenced Walker to 188 months' imprisonment, to be followed by lifetime supervised release. [DE 20]. The Court later amended the Judgment twice, but the term of imprisonment and supervision did not change.

1

Walker was released from custody and began serving his supervised release term on November 28, 2023.

## II. SUPERVISED RELEASE HISTORY

The United States Probation Office ("USPO") issued a violation report on June 11, 2024 ("June 2024 Violation Report"), detailing the current violation. At the time of the violation, Walker was living with his sister, Wanda Houddleston, her husband Bobby, and their adult son. On December 21, 2023, Walker's sex offender counselor, Dr. Keth Hicks, completed a Psychosexual Risk of Harm Evaluation, which included Walker's admission that he had sexually abused his step-niece, Wanda's daughter ("Dorothy-1"), when she was fifteen years old. [June 2024 Report, at p. 1]. However, USPO Officer Michael Raccuia ("Officer Raccuia") reported that during a visit to Wanda's home on May 20, 2024, both Wanda and Walker insisted that Dorothy-1 was not Walker's victim. Instead, Wanda claimed that the family member Walker had victimized was his other step-niece ("Dorothy-2"). Officer Raccuia noted that during this exchange, Walker did not admit to victimizing Dorothy-1; he only agreed with Wanda's statement regarding Dorothy-2.

On May 21, 2024, Dr. Hicks informed Officer Raccuia that he had contacted Dorothy-1, who told him she did not clearly remember any sexual abuse by Walker, though she was aware of his previous charge related to the abuse of Dorothy-2. [June 2024 Report, at p. 2]. On June 6, 2024, Officer Raccuia attended a sex offender group session with Walker, during which Walker admitted he had lied about his abuse of Dorothy-1 during the May 20, 2024, home visit. He further revealed that Wanda was aware he had victimized her daughter, Dorothy-1, despite her earlier denial. Officer

2

Raccuia intended to verify this information with Wanda, as she regularly transported Walker to his treatment sessions. However, before he could confirm this with Wanda in the parking lot, Walker admitted he had lied again, stating that Wanda was not aware he had previously victimized Dorothy-1. [June 2024 Report, at p. 2].

Both Officer Raccuia and Dr. Hicks instructed Walker not to disclose the victimization of Dorothy-1 to Wanda until the following week, when it could be addressed in a therapeutic setting. [June 2024 Report, at p. 2]. The next day, however, Walker informed Officer Raccuia that he had told Wanda about his victimization of her daughters, Dorothy-1 and another then-minor female, on the way home from the group counseling session. According to the June 2024 Report, Walker not only failed to be forthcoming with Officer Raccuia regarding his victimization of Dorothy-1, but he also defied Officer Raccuia's instructions by informing Wanda about his prior acts of abuse outside a therapeutic setting. These actions constitute the basis for Violation 1, a Grade C violation, based on Standard Condition #3, which requires Walker to "answer truthfully all inquiries by the probation officer" and to "follow the instructions of the probation officer." [June 2024 Report, at p. 3].

The Court conducted an initial appearance on the supervised release violations pursuant to Federal Rule of Criminal Procedure ("Rule") 32.1 on July 2, 2024. [DE 38]. The Court advised Walker of his constitutional rights, including his right to counsel. The Court found that Walker was not entitled to a preliminary hearing pursuant to Rule 32.1(b)(1)(A) because he was not in custody and the United States was not seeking detention. [DE 38].

At the final hearing on July 24, 2024, the Court found Walker to be competent to enter a knowing, voluntary, and intelligent stipulation to Violation 1. [DE 39]. For purposes of the Rule 32.1 proceedings, Walker admitted the factual basis for the violation. [DE 39]. Accordingly, the Court found that the United States established the reported violation as reflected pursuant to 18 U.S.C. § 3583(e).

The parties agree that Violation 1 is a Grade C violation. They also agree that Walker's criminal history, as established at sentencing, was a Category III, the underlying offense was a Class C felony, and that the resulting United States Sentencing Guidelines Range ("Guidelines" or "USSG") upon revocation would be 5–11 months with a statutory maximum of 36 months' imprisonment. 18 U.S.C. § 3583(e). Pursuant to 18 U.S.C. § 3583(h), there is no maximum term of supervised release that can be reimposed.

### III.   ANALYSIS

The Court has evaluated the entire record and considered the arguments presented at the final hearing, the record concerning Walker's violations, the Presentence Investigation Report ("PIR"), and the factors set forth in 18 U.S.C. § 3583(e). Considering the incorporated § 3553(a) factors, the undersigned finds that revocation is not warranted at this time.

Generally, revocation of a term of supervised release is warranted to reflect the circumstances surrounding the instant violations and a defendant's original offense, to adequately deter a defendant from future criminality, and to protect the public from any such future crimes. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(C). Revocation is also a necessary consequence for a defendant's abuse of the Court's trust. *See* USSG

§ 7, Pt. A. intro. comment 3(b) (observing that "revocation . . . should sanction primarily the defendant's breach of trust").

In recommending that Walker's supervision not be revoked, the Court is acutely aware that the facts underlying this violation point to a serious breach of trust. The Court recognizes the gravity of such conduct, which is why the Guidelines contemplate revocation as a sanction for breaching the Court's trust. *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (citing USSG § 7, Pt. A). However, the Guidelines also mandate that courts carefully consider "the nature of the conduct" when assessing the extent of the breach. *See* USSG § 7, Pt. A. intro. comment 3(b); *see also United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023).

Lying to a probation officer and disregarding their instructions are unquestionably severe breaches of trust. In this case, Walker (1) displayed a troubling lack of candor by lying twice about his prior abuse of Dorothy-1, and (2) defied his probation officer's instructions by disclosing his abuse of two victims to Wanda outside a therapeutic setting, thereby revictimizing them and their family. These actions not only violated the trust between Walker and his probation officer but also undermined the trust of this Court.

Defense counsel argues that this violation should serve as a "warning shot" and that leniency is warranted, given that this is Walker's first violation and that the revelations about Dorothy-1's abuse arose during Walker's therapy and treatment. The United States acknowledges the seriousness of Walker's lack of candor and the

5

harm caused to his victims but defers to the Court on whether revocation is appropriate.

Given the circumstances of this violation, the Court does not recommend revocation at this time. Walker's dishonesty with his probation officer is deeply troubling, particularly in light of the secretive nature of his prior conviction. His failure to follow instructions is equally concerning, not just because it breached this Court's trust, but because it led to the further harm of his family members. However, the undersigned believes that revocation is not the fitting sanction for this conduct at this time. Future violations of this nature will not be met with the same leniency. As the Court advised Walker during the final hearing, he must be fully transparent with his treatment providers and probation officer if he wishes to remain under supervision. Any future violations will be considered a serious breach of this Court's trust.

## IV.  CONCLUSION

Accordingly, for the reasons stated herein, the undersigned **RECOMMENDS** that:

(1)   Walker be found guilty of Violation 1; and

(2)   Walker continue to serve his current lifetime term of supervised release without revocation or modification.

Walker preserved his right of allocution. Absent a waiver of allocution, this matter will be placed on Judge Caldwell's docket for an allocution hearing upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 16th of August, 2024.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY